**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Civil Action No. 17-cv-03019-MSK-KMT

**HENRY LEE GRIFFIN JR.,**

     Plaintiff,

v.

**VIRGINIA GORMAN,
AMY MORRISON,
BRYAN COLEMAN, and
DAVE LISAC,**

     Defendants.

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION
FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants Motion for Summary Judgment **(# 84)**, Mr. Griffin's response **(# 92)**, and the Defendants' reply **(# 95)**. Also pending are Mr. Griffin' Objections **(# 76)** to a January 13, 2020 Order **(# 75)** of the Magistrate Judge denying Mr. Griffin's Motion to Compel **(# 57)**; Mr. Griffin's motion **(# 91)** seeking to exclude certain evidence tendered in the Defendants' summary judgment motion; and the Defendants' Motion to Restrict Access **(# 86)** to certain filings, among others.

## FACTS

The Court summarizes the pertinent facts here and elaborates as necessary in its analysis. Mr. Griffin is an inmate in the custody of the Colorado Department of Corrections ("CDOC"), housed at the Buena Vista Correctional Facility ("BVCF").

1

At all times pertinent herein, CDOC maintained Administrative Regulation 300-26, a policy governing inmate access to publications. AR 300-26 provides that incoming mail to inmates is screened by each facility's mailroom staff and that any materials meeting certain definitions (*e.g.* materials depicting the manufacture of explosives or weapons, materials depicting violence, etc.) are referred to the facility's "Reading Committee"[1] for further evaluation. The Reading Committee evaluates the material according to the terms of AR 300-26 and makes a final determination as to whether the material falls within a prohibited category, and, if so, the inmate is notified that the material is deemed contraband.

As pertinent here, one of the categories of materials set aside for additional scrutiny is materials "containing nudity and/or sexually explicit conduct." AR 300-26 defines "nudity" as "[t]he fully exposed, or transparently covered, depiction or display of the human genitals, genital area, anus, or the female areola and/or nipple," including images depicting "pasties, blackened dots or stars and other such covering of the nipple and areola of the female breast or of the human genitalia." The regulation defines "sexually explicit conduct" as any material containing "any display, actual or simulated, or description of any of the following (whether nude or clothed) . . . (1) Sexual intercourse or sodomy, including genital-genital, oral genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender or by animate or inanimate objects; [or] (2) masturbation. . . ."

In 2016, Mr. Griffin contacted a vendor named Flix 4 You and ordered copies of a number of photographs. On June 23, 2016, the BVCF mailroom received three envelopes from Flix 4 You, containing approximately 75 photographs. Defendant Victoria Gorman, a BVCF

---

[1] In some portions, AR 300-26 appears to also refer to this body as the "Publication Committee."

mailroom staffer, determined that 6 of the photographs potentially implicated the nudity or sexually explicit conduct provisions of AR 300-26 and forwarded those images to the Reading Committee, which consisted of Defendants Davie Lisac, Bryan Coleman, and Amy Morrison.

The six images in question are:

> **Image 1**: A photo of a woman standing in a body of water, wearing a white shirt that is partially wet. *Docket #* 85 at 2. According to the Defendants' motion, the Reading Committee determined that the photo constitutes nudity because "the transparent wet shirt . . . reveals her areola and nipple."
>
> **Image 2**: A photograph of a kneeling woman, taken at an oblique angle from behind her right side. *Docket* # 85-1 at 2. Upon cursory review, she appears to be wearing a cropped sports uniform top and bikini bottom. According to the Defendants' motion, the Reading Committee determined that the photo constituted nudity because the "uniform" is actually body paint, and that the photo "show[s] her breast and nipple in profile."
>
> **Image 3:** A photo of two women (an a largely-obscured third) in cheerleading outfits. *Docket* # 85-1 at 2. The photo is taken from behind the women, whose legs are spread as they bend over at the waist and touch the ground, such that their faces, upside-down, are visible to the viewer. Because of the women's short skirts, their underwear is visible. According to the Defendants' motion, the Reading Committee determined that this photograph depicted sexually explicit content because it "reveal[s] their genital area and buttocks in a position that simulates sexual intercourse, sodomy, and/or masturbation.
>
> **Image 4**: A photo of a woman standing and facing the camera holding a football. *Docket* # 85-1 at 4. Upon cursory review, the woman appears to be wearing a football jersey and knee-length athletic pants. According to the Defendants' motion, the Reading Committee determined that the photo depicts nudity because the "uniform" is actually body paint and the photo "show[s] her genital area, nipples, and areola."
>
> **Image 5**: A photo of a woman wearing a white t-shirt. *Docket #* 85-2 at 2. The woman is facing away from the camera, in either a kneeling position or bent over at the waist, with her head turned so that her face is visible. The composition of the photo focuses

3

> primarily on her exposed buttocks and thighs, with her genitals and anus covered only by red "thong"-style underwear. It is not completely clear whether the Reading Committee determined that the photo depicts "nudity" or "sexually explicit content. The Defendants' brief states that the Committee observed that "her buttocks and genital area [is] partially covered in a position that simulates sexual intercourse, sodomy, and/or masturbation."
>
> **Image 6:** A photo of a woman laying on a couch. *Docket # 85-2* at 3. Her legs are in the air and her face is visible. The composition of the photo focuses on her exposed buttocks and thighs, with her genitals and anus covered only by plaid "thong"-style underwear. The Defendants' brief indicates that the Reading Committee determined the photo constitutes sexually explicit content because the woman is depicted "in a position that simulates sexual intercourse, sodomy, and/or masturbation."

The Reading Committee confiscated the six photos from the June 23, 2016 mailing.

On September 29, 2016, the BVCF mailroom received another envelope addressed to Mr. Griffin from Flix 4 You. This envelope contained approximately 18 photos. The mailroom staff forwarded three of the photos to the Reading Committee for further evaluation, and the Committee determined that all three constituted contraband. Two of the three photographs appear to be identical to Images 5 and 6, discussed above. The third image is as follows:

> **Image 7**: A photo of a woman lying on a bed or couch. The photo is taken from near her feet and her face is visible, but somewhat out of focus in the distance. The composition of the photo emphasizes the woman's legs and feet, clad in fishnet stockings and high heels, her legs bent at the knees. The photo also prominently depicts one of her mostly bare thighs, as her skirt is hiked up. Her genital area is somewhat visible, covered by white bikini underwear. According to the Defendant's brief, the Reading Committee determined that this photo constitutes sexually explicit content because the woman is depicted "in a manner that simulates sexual intercourse, sodomy, and/or masturbation."

The Reading Committee declared Image 7 as contraband as well and confiscated it.[2]

Mr. Griffin commenced this action *pro se*[3] against Ms. Gorman and the members of the Reading Committee. Although he initially asserted an array of claims, his sole remaining claim is brought pursuant to 42 U.S.C. § 1983, alleging that each Defendant violated his First Amendment right to free expression and his 14th Amendment right to due process.

The Defendants move for summary judgment **(# 84)**, arguing: (i) that each of the challenged photos "irrefutably depict either nudity or sexually explicit content, as those terms are defined in AR 300-26," such that Mr. Griffin cannot demonstrate that the confiscation of the photos violated his constitutional rights; and (ii) to the extent that any constitutional violation occurred, the Defendants are entitled to qualified immunity because the scope of such violation was not "clearly established" by existing law.

Mr. Griffin offers several arguments in response. First, he moves **(# 91)** to "exclude all photo evidence" pursuant to Fed. R. Civ. P. 26. Mr. Griffin contends that the Defendants should be sanctioned for "destroying, concealing, and altering photo evidence [ ] submitted to this Court"; for "violat[ing] my due process rights [by] obstruct[ing] my access to the photo evidence"; and for "introduc[ing] fabricated photo evidence into the record," although he offers few details supporting these contentions. Second, he argues that: (i) the stated purpose of AR

---

[2] It is not clear from the record what became of the confiscated photos. Forms provided to Mr. Griffin offered him options to return the photos to the sender or have them mailed at his expense to a third party. The form advised that his failure to specify a disposition would result in the material being "disposed of by the facility" 30 days later. It does not appear that Mr. Griffin identified any alternative disposition and, presumptively, it would appear that the photos were thereafter destroyed. But it is also clear that some version of the photos still exists, as they have been produced in this litigation.

[3] Because of Mr. Griffin's *pro se* status, the Court construes his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

300-26 is the "balanc[ing] the offender's right to receive, read, and view publications with the right of [CDOC] staff to work in an environment free of hostility and sexual harassment", and therefore it is not implicated by his receipt of the challenged photos because he was prepared to keep the photos in a photo album that would not normally be visible to BVCF staff; (ii) that AR 300-26 is unconstitutional for various reasons; (iii) that he disputes that any photos from the mailings at issue were ever provided to him; in other words, he contends that every photo sent by Flix 4 You, a number Mr. Griffin places at in excess of 100, was confiscated by the Defendants without cause; and (iv) that the confiscated photos did not violate the terms of AR 300-26 because the women in each photo were clothed.  After the Defendants filed their reply brief, Mr. Griffin, without seeking leave of the Court, filed a document that is essentially a sur-reply **(# 97)**.  That document largely amplifies Mr. Griffin's argument that he never received any of the roughly 100 photos that were sent to him, not just the seven confiscated photos.

Certain other matters are also pending before the Court and will be addressed in detail below.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Constitutionality of AR 300-26

Despite incarceration, inmates retain a First Amendment right to receive information while in prison, so long as the transmission of that information does not conflict with legitimate penological interests. *Sperry v. Werholtz*, 413 Fed.Appx. 31, 39 (10th Cir. 2011). It is axiomatic that this First Amendment right extends to non-obscene material that might be sexually-suggestive. In determining whether a prison regulation restricting inmates' ability to receive information and materials, the Court applies the four-part balancing test of *Turner v. Safley*, 482 U.S. 78, 89 (1987). Specifically, the Court examines: (i) whether there is a rational connection between the regulation and a legitimate governmental interest; (ii) whether alternative means of exercising the constitutional right remain available to inmates; (iii) the effect that accommodating the inmate's claimed right would have on guards, inmates, and the allocation of prison resources; and (iv) the absence of ready alternatives. The <u>inmate</u> bears the burden of showing that the regulation is invalid. *Sperry*, 413 Fed.Appx. at 40.

Mr. Griffin's argument that AR 300-26 is unconstitutional is minimal, focusing largely on the contention that CDOC's stated interest in protecting its staff from sexual harassment can be accommodated by Mr. Griffin keeping any sexually-suggestive materials in a binder that would not ordinarily be visible to prison staff. This bare, conclusory assertion defies common sense. As an inmate, Mr. Griffin's possessions, including his photo album, are always subject to search by BVCF officials, and any BVCF official conducting such a search would be required to review any sexually-suggestive photos as part of their duties. *See generally Sperry*, 413 Fed.Appx. at 34, 37 (adopting trial court's finding that regulation on inmate possession of materials depicting nudity or sexually explicit matter was rational because, among other things, "materials may also be used to sexually harass staff members [and] there was a potential for staff

8

to file sexual harassment complaints due to exposure to the materials in the workplace").

Although the Defendants' reply brief does not engage Mr. Griffin's argument that AR 300-26 is unconstitutional, and thus the Defendants have not tendered evidence as to the rationale and policy underlying that regulation, the burden is on Mr. Griffin to demonstrate the regulation's unconstitutionality, and his skeletal argument addressing only the alternative of allowing sexually-suggestive material to be kept in a photo album does not suffice to carry his burden under the *Turner* standard. AR 300-26's stated purpose – the protection of CDOC staff against unwilling exposure to sexually-suggestive materials in the course of their duties – is one that the 10th Circuit has found to be legitimate and to rationally justify prohibitions against inmate possession of materials involving nudity and sexual suggestiveness. *Sperry, supra.*. Because Mr. Griffin has failed to come forward with evidence casting doubt upon the reasonableness of that explanation or otherwise addressing the *Turner* factors, the Court finds that Mr. Griffin has failed to carry his burden of demonstrating that AR 300-26 is unconstitutional.

### C. Application of AR 300-26

Having concluded that AR 300-26 applies, the remaining question on Mr. Griffin's claim is whether Mr. Griffin can show that the Defendants' misapplied that regulation's requirements.[4]

---

[4] The Court summarily rejects Mr. Griffin's arguments that the Defendants engaged in any sanctionable conduct. Mr. Griffin has not shown that any photos were destroyed – indeed, they were retained in a form that sufficiently allowed them to be presented to the Court in this litigation. Nor has he shown any evidence, or indeed offered any argument, that the photos in the record were somehow "fabricated." As to Mr. Griffin's argument that he was denied due process by not being allowed to see the photos that the Defendants deemed to be contraband, the Court allows the tautological nature of Mr. Griffin's argument on that point to stand for itself. Moreover, the Court notes that because Mr. Griffin apparently ordered the photographs from Flix 4 You himself, he presumably has some pre-existing knowledge of the general character and content of the confiscated photos.

The confiscated photos can be grouped into two categories: those found to depict "nudity," as that term is defined in AR 300-26, and those found to depict "sexually explicit content." The Court takes each category in turn.

As noted above, AR 300-26 allows photos depicting "nudity" to be deemed contraband. "Nudity" is defined as "the fully exposed, or transparently covered, depiction or display of the human genitals, genital area, anus, or the female areola and/or nipple." The regulation also extends that definition to displays of such nudity that are otherwise concealed by "pasties, blackened dots or stars and other such covering." Having reviewed the photos excluded under the "nudity" provision – namely Images 1, 2 and 4 – and giving due account to the degradation

---

As to Mr. Griffin's contention that every photo sent from Flix 4 You – more than 100 by his count – was confiscated by the Defendants, rather than simply the 7 photos at issue here, the Court notes that, on the surface, the question of how many photos were actually confiscated would appear to be a question of fact warranting a trial. But the Court notes that, pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), Mr. Griffin's ability to bring suit in this matter is constrained by the scope of internal grievances he filed with CDOC officials. In a grievance dated July 22, 2016, Mr. Griffin complains about the Defendants' confiscation of portions of the June 2016 shipment from Flix 4 You. In that grievance, Mr. Griffin states:

> Ms. Gorman sent me (4) separate 300-38D Forms stating "censored in part (1) photo [ ]; (2) photos [ ]; and (3) photos [ ], but these were the same (105) photos from (6-23-16). REMEDY: I'd like all (6) photos delivered to me immediately. I do not want the photos destroyed.

*Docket* # 95-1 (emphasis added). Thus, even if Mr. Griffin is correct and the Defendants confiscated far more than the small number of photos discussed herein, Mr. Griffin has not shown that he adequately exhausted his administrative remedies under the PLRA with regard to any additional photos by challenging their confiscation through the prison grievance procedure. (Neither party has tendered Mr. Griffin's grievance(s) relating to the September 2016 confiscation of Image 7 but, in the absence of a showing that Mr. Griffin grieved the confiscation of that entire shipment of photos, this Court will constrain its review to only those photos whose confiscation is documented in the record.) Thus, the Court limits Mr. Griffin's claim in this case to the 7 photos discussed herein.

in quality of images as they are scanned and presented in the Court record, the Court finds that the Defendants reasonably construed all three photos to depict nudity. Image 1 clearly depicts the subject's nipple and areola through her transparent wet shirt. Images 2 and 4 are slightly more difficult to assess, but it is clear from the poses in both images that the model's areola and nipple would normally be visible to the viewer. It may be that, through the makeup artist's skillful application of body paint those features may be concealed or effectively hidden from the viewer. But even so, the photos would nevertheless constitute "nudity" as defined in AR 300-26 because the use of body paint on the model's nipple and areola would be the equivalent of "pasties, blackened dots or stars, or other such covering" of that area. The examples given in AR 300-26 demonstrate that the use of an opaque material to conceal the nipple and areola area while maintaining the suggestion of the model's exposed breasts nevertheless constitutes "nudity," and the Court sees no distinction between those examples and the use of an opaque body paint to accomplish the same result. It is clear from the composition of both photos that the viewer is intended to understand that the model's breasts are fully exposed, but for the concealment offered by the body paint, making the paint a form of a "covering" specifically contemplated by the regulation's definition of "nudity." Accordingly, the Court finds that the Defendants properly concluded that Images 1, 2, and 4 depict "nudity" as defined in AR 300-26, allowing those images to be confiscated.

AR 300-26 defines "sexually explicit conduct" to be "any display, actual or simulated, . . . . whether nude or clothed" of two primary acts: "sexual intercourse" or "masturbation." (The Court omits alternative definitions that are irrelevant herein.) By definition within AR 300-26, "sexual intercourse" involves a depiction of at least two people engaging in actual or simulated oral, genital, or anal contact. Images 5, 6, and 7 cannot possibly depict actual or simulated

11

sexual intercourse because each of those photos depict only a single person, and none of the photos contain any depiction, actual or suggestive, of any contact with the model's mouth, genitals, or anus. Image 3 depicts two (arguably three) cheerleaders, but it is clear that they are not engaging in oral, genital, or anal contact with one another, and thus, Image 3 does not depict sexual intercourse either.

As for the term "masturbation," AR 300-26 does not offer a specific definition, but commonly-used definitions of that term involve "the stimulation, usually by hand, of one's genitals for sexual pleasure," *Oxford English Dictionary*, 3d Ed., or "erotic stimulation especially of one's own genital organs," *Merriam-Webster Collegiate Dictionary*, 10th Ed. None of Images 3, 5, 6, or 7 depict the subject of the photograph actually or suggestively stimulating their own genitals, by hand or otherwise. Thus, none of those photos depict actual or suggestive "masturbation" either. Accordingly, Images 3, 5, 6, and 7 cannot be said to depict any form of "sexually explicit conduct" as that term is defined by AR 300-26. As such, the Court finds that no reasonable reading of AR 300-26 would permit the conclusion that Images 3, 5, 6, and 7 could be censored as "sexually explicit conduct."

The Defendants do not offer a particular explanation of their interpretation of the definition of "sexually explicit conduct" or "sexual intercourse" that would explain why they believe that Images 3, 5, 6, and 7 fit those categories. They simply state the conclusion that each photo "simulates sexual intercourse." It would appear that the Defendants' argument is largely defined from the pose of the subject of each photo – that each subject is depicted in a physical position by which (if another participant were present and certain items of clothing were removed) sexual congress could be achieved. Thus, the Defendants' argument appears to be that if a photo that depicts a person in a physical position that would facilitate sexual intercourse, the

photo constitutes "simulated intercourse" regardless of any other features, such as the model's clothed status, the context of the photo, or the photographer's apparent intent. Such a broad reading of AR 300-26 would allow the regulation to censor an incredible array of decidedly non-sexual imagery, including:

> • photographs of a leotard-clothed ballerina performing a grand jeté, swimmers bent over at the starting blocks awaiting the sound of the gun, or an Olympic diver holding a tuck position.
>
> • images from stage productions of Shakespeare's *Romeo & Juliet* or *Anthony & Cleopatra*, depicting the titular heroines reclining in the moments before their deaths.
>
> • a fully-clothed Alice from *The Brady Bunch* or June Cleaver from *Leave It To Beaver*, bent over an open oven, checking the temperature of a roast.
>
> • the quadrennial hilarity of prospective presidential candidates photographed gamely attempting to eat a corn-dog-on-a-stick at the Iowa State Fair.

Clearly, AR 300-26's scope, itself a limited exception to inmates' ability to receive First Amendment-protected communications, does not sweep so broadly. Rather, the regulation must be interpreted strictly according to its terms, banning only depictions of <u>actual</u> sexual intercourse or depictions that <u>simulate</u> two persons engaging in intercourse (*e.g.* stills from cinematic sex scenes where the actors are merely <u>pretending</u> to engage in sex). Stretching that definition to encompass images that simply depict the subject in a sexually-receptive pose, wittingly or not – one suspects the cheerleaders in Image 3, in the midst of an on-field dance routine during a popular sporting event, were not intending to simulate sexual activity – exceeds both the plain language of AR 300-26 and the reasonable intrusions that *Turner* permits upon inmates' First Amendment rights.

13

Accordingly, in the absence of any other justification[5] for confiscating Images 3, 5, 6, and 7, the Court would agree with Mr. Gorman that the Defendants violated his First Amendment rights to possess those images.

That outcome presents a slight procedural difficulty. The Defendants have moved for summary judgment, but it would seem that Mr. Griffin is entitled to judgment in his favor with regard to his claims relating to Images 3, 5, 6, and 7. Fed. R. Civ. P. 56(f) provides that, in appropriate circumstances, and upon giving the affected party, here the Defendants, notice and a reasonable opportunity to respond, the Court can grant summary judgment to a non-movant like Mr. Griffin.

The Court advises the Defendants that it appears that there is no genuine dispute of fact as too whether confiscation of Images 3, 5, 6, and 7 was appropriate under AR 300-26. Accordingly, within 14 days of this Order, the Defendants shall show cause why summary judgment should not be granted to Mr. Griffin with regard to these images. In doing so, the Defendants shall also address questions of remedy, as set forth below.

### D. Qualified immunity/remedy

The Defendants argue that, to the extent that Mr. Griffin has stated a constitutional claim against them, they are nevertheless entitled to qualified immunity because the scope of any such

---

[5] The Court does not understand the Reading Committee to have concluded that, in the alternative, Images 3, 5, 6, or 7 contained "nudity" as defined in the regulation. In each image, the model's genitals and anus are covered by some form of underwear. There is some slight degree of ambiguity in that portion of the definition of "nudity" that deems depictions of genitals that are covered by "blackened dots or stars and other such covering," as, arguably, underwear is a "covering" of what would otherwise be exposed genitals. But the Defendants have not meaningfully urged such a reading of the regulation, nor would the Court find such a reading to be reasonable. Thus, Images 3, 5, 6, and 7 would not be subject to designation as contraband under the definition of "nudity."

14

claim was not "clearly established" as of 2016.

Before the Court can turn to the question of whether qualified immunity protects the Defendants, it must first consider the question of what remedies are available to Mr. Griffin in this action. Qualified immunity is a defense to claims for an award of only money damages. *See Ashcroft v. al-Kidd*, 563 U.S.. 731, 735 (2011). But it is not clear that Mr. Griffin can actually obtain money damages in this action. The Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(e), provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Mr. Griffin certainly cannot demonstrate a physical injury that he sustained as a result of the un constitutional confiscation of Images 3, 5, 6, and 7, and thus, it would seem that he cannot recover money damages for any mental or emotional injury resulting from such a constitutional deprivation. However, in *Searles v. Van Bebber*, 251 F.3d 869, 878-79 (10th Cir. 2001), the 10th Circuit concluded that the Prisoner Litigation Reform Act does not preclude the award of nominal damages to an inmate who demonstrates a constitutional deprivation that has not resulted in any physical injury. Thus, it would appear that, at a minimum, Mr. Griffin could recover nominal damages against the Defendants.[6]

Thus, the Court turns to the question of whether Mr. Griffin's right to receive photos like

---

[6] There is an unaddressed question of whether Mr. Griffin can claim compensatory (*i.e.* economic) damages for the value of any confiscated photographs that were subsequently destroyed. The record does not adequately permit a determination as to whether the confiscated photographs were retained or destroyed. Mr. Griffin seems to assume, without actually adducing evidence, that they were destroyed. The Defendants have not so stated, but it is clear that, at a minimum, copies of the photographs exist in an electronic form. Ultimately, this Court need not resolve the question of whether Mr. Griffin can obtain compensatory damages at a trial, as his ability to recover nominal damages is enough to require the Court to proceed to the qualified immunity analysis.

15

those depicted in Images 3, 5, 6, and 7 was "clearly established" as of 2016. If not, the Defendants would be entitled to qualified immunity on any claims by Mr. Griffin for monetary damages. Once qualified immunity is raised, the burden is on Mr. Griffin to cite to caselaw from the U.S. Supreme Court or 10th Circuit (or the weight of authority from other circuits) that recognizes the contours of the First Amendment deprivation he asserts here, in a sufficiently-similar factual scenario based on the particularized facts of each case. *See generally Hally v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018); *Mglej v. Gardner*, 974 F.3d 1151, 1159-60 (10th Cir. 2020). At the same time, the "clearly established" prong of the qualified immunity analysis does not require prior cases to be "directly on-point" to the instant one, and indeed, in cases such as this one where each application of a regulation like AR 300-26 to a different photograph requires a unique regulatory judgment, the Court's question is simply whether existing precedent "placed the statutory or constitutional question beyond debate." *Mglej*, 974 F.3d at 1160.

In *Elliott v. Cummings*, 49 Fed.Appx. 220, 223, 225 (10th Cir. 2002), the 10th Circuit considered a Kansas prison regulation similar to AR 300-26. The court affirmed the dismissal of the inmate's § 1983 First Amendment claims relating to the confiscation of periodicals that depicted "simulated sexual activity and discharged sexual fluids." But it reversed the trial court's dismissal of similar claims relating to the alleged confiscation of photos sent to him from a pen pal, photos which depicted "women in panties or swimsuits and that none of the photographs contained pictures depicting sexual penetration or bodily fluids." The 10th Circuit's reversal was not technically based upon a conclusion that the photos in question were permissible under the terms of the regulation, but rather, because there were disputed facts as to whether the photographs had been confiscated in the first place. But one can reasonably infer that no such reversal would have been necessary if the photos in question could have been

16

legally confiscated by the prison under the regulation in any event. Thus, *Elliott* lends some support to a finding that, as of 2016, that a reasonable person in the position of the Defendants would have been aware that confiscation of inmate photos depicting "women in panties or swimsuits," but otherwise containing no depictions of sexual intercourse, could violate an inmate's First Amendment rights.

More broadly, however, this Court finds that this case falls within the category of cases that the Supreme Court has explained offer "obvious" outcomes, where general articulation of legal standards can "clearly establish the answer, even without a body of relevant case law," rendering it unnecessary to identify a "materially similar case." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Here, it is difficult to conceive of a reading of AR 300-26 that would reasonably permit the conclusion that Images 3, 5, 6, and 7 depicted "sexually explicit conduct" as that term is defined in the regulation, given that each photo effectively depicted a single, fully- or semi-clothed model who was not in any way touching, displaying, or engaging in any contact with her genitals or anus. In such circumstances, the Court is confident that general rules stated above recognizing an inmate's First Amendment rights to receive communications encompasses photos such as those at issue that obviously fall outside the scope of the prison regulation's definitions. Accordingly, the Court finds that the Defendants are not entitled to qualified immunity to the extent that Mr. Griffin would be entitled to monetary damages relating to the confiscation of Images 3, 5, 6, and 7.

### E. Remaining matters

Finally, Mr. Griffin filed timely Objections **(# 76)** to the Magistrate Judge's January 13, 2020 Order **(# 75)** that denied Mr. Griffin's Motion to Compel **(# 57)**. The particular details of Mr. Griffin's original motion are somewhat unclear, apparently relating to prior proceedings

17

involving the parties and the Magistrate Judge that are not immediately apparent from the record, but it appears that Mr. Griffin was requesting that the Defendants be compelled to respond to certain discovery requests he had propounded. In the January 13, 2020 Order, the Magistrate Judge denied Mr. Griffin's motion as moot, finding that although the discovery requests were outstanding at the time Mr. Griffin filed his motion, "at the Scheduling Conference, Defendants were ordered to respond to Plaintiff's discovery by November 1, 2019 [and] Defendants served their responses [on that date]." Mr. Griffin's filed timely Objections to that order, arguing that the Defendants' discovery responses contained "less than (5 documents) Plaintiff actually requested," and that "it is unfair . . . for the Court not to compel the defendants to provide [his] requested documents."

Fed. R. Civ. P. 72(a) requires the Court to affirm a non-dispositive ruling by a Magistrate Judge unless the Court finds that the ruling is "clearly erroneous or contrary to law." Here, the Magistrate Judge denied Mr. Griffin's motion to compel responses to interrogatories as moot because the Magistrate Judge had set a date for those responses. Mr. Griffin's current Objections do not relate to the issue of the Defendants' initial failure to respond to the requests nor the Magistrate Judge's fixing of a time for response. Rather, Mr. Griffin objects to the fact that the responses the Defendants eventually served were incomplete. To the extent Mr. Griffin was dissatisfied with the Defendants' substantive response to his requests, the solution was not to object to a ruling by the Magistrate Judge on a motion that did not – and indeed, could not – have challenged the substantive quality of the Defendants' responses (because such responses had not yet been served at the time of Mr. Griffin's initial motion to compel), but rather, to file a new motion to compel detailing the substantive deficiencies. Because the Court finds that the Magistrate Judge's January 13, 2020 Order was not clearly erroneous or contrary to law based on

18

the record set forth in Mr. Griffin's initial order, the Court overrules Mr. Griffin's Objections to that Order.

The final matter remaining for the Court's attention is the Defendants' Motion to Restrict Access **(# 76)** to certain exhibits – namely, the photos in question – attached to their summary judgment motion. The Defendants explain that a Level 2 restriction – one that restricts both public access and Mr. Griffin's access – is necessary to effectuate CDOC's purpose of denying Mr. Griffin access to materials that have been deemed to constitute contraband. The Court does not disagree with the Defendants' position: it is entirely appropriate to deny Mr. Griffin access to Images 1, 2 and 4, given that both the Defendants and the Court have concluded that AR 300-26 prohibits Mr. Griffin from obtaining access to those photos. But there can be little argument that the public has a considerable interest in having access to the photographs in question, allowing it to gauge the functioning of the state prison system and the decision-making of both the Defendants and this Court. Unfortunately, D.C. Colo. L. Civ. R. 7.2's "level"-based system of restrictions on public access does not contemplate situations where public access is appropriate but restrictions on another party's access to a filing is warranted. The most appropriate solution is to deny the Defendants' motion and remove any restrictions on the public's access to Docket # 85 in its entirety, allowing any member of the public to view the photographs in question.

To prevent Mr. Griffin from thereafter obtaining copies of Images 1, 2, and 4 simply by requesting copies of them from the Clerk of the Court, possibly through a "legal mail" channel that might bypass BVCF's mailroom screening process, the Court will direct that the Clerk of the Court append text to Docket # 85, indicating that "by Order of the Court, copies of this docket entry may not be disclosed to Mr. Griffin by the Clerk." On that basis, the Defendants' motion to restrict is denied.

19

## CONCLUSION

For the foregoing reasons, Mr. Griffin's Objections **(# 76)** are **OVERRULED**. The Defendants' Motion for Summary Judgment **(# 84)** is **GRANTED IN PART** and **DENIED IN PART** as follows: the Defendants are entitled to summary judgment in their favor on Mr. Griffin's sole remaining claim as it relates to Images 1, 2, and 4 identified herein. But the Court is inclined to both deny the Defendants' summary judgment motion and grant summary judgment in favor of Mr. Griffin on that claim with regard to Images 3, 5, 6, and 7, and pursuant to Fed. R. Civ. P. 56(f), the Defendants shall, within 14 days, show cause why such judgment should not be entered in Mr. Griffin's favor. The Defendants' Motion to Restrict **(# 86)** is **DENIED**, and the Clerk of the Court shall lift the provisional restriction on public access to Docket # 85, but shall append to that docket entry text reading "by Order of the Court, copies of this docket entry may not be disclosed to Mr. Griffin by the Clerk." Mr. Griffin's Motion for Sanctions **(# 91)** is **DENIED**. The "motions" at Docket # 92 and 96 are not properly categorized as motions and the Clerk of the Court shall terminate their designation as such.

Dated this 2nd day of February, 2021.

BY THE COURT:

*Marcia S. Krieger*
_____

Marcia S. Krieger
Senior United States District Judge