**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Marcia S. Krieger**

**Civil Action No. 17-cv-03019-MSK-KMT**

**HENRY LEE GRIFFIN JR.,**

**Plaintiff,**

**v.**

**VIRGINIA GORMAN,**
**AMY MORRISON,**
**BRYAN COLEMAN, and**
**DAVE LISAC,**

**Defendants.**

---

**OPINION AND ORDER GRANTING, IN PART, SUMMARY JUDGMENT TO PLAINTIFF**

---

**THIS MATTER** comes before the Court *sua sponte*, following up on the Court's February 2, 2021 Opinion and Order Granting Motion For Summary Judgment, in part **(# 98)**.

The Court assumes the reader's familiarity with the February 2021 Order. In summary, the Court granted summary judgment to the Defendants (collectively, "CDOC") on Mr. Griffin's claims that CDOC's confiscation of certain photographs depicting a degree of nudity was constitutional. But the Court determined that certain other images – identified in that Order and herein as Images 3, 5, 6, and 7 – were not encompassed by CDOC's regulations prohibiting inmate receipt of sexually-explicit content, as the images did not meet that regulation's definition of proscribed content. The Court further found that the Defendants were not entitled to qualified immunity on Mr. Griffin's claims relating to those four images.

Because Mr. Griffin had not moved for summary judgment in his favor on his claims relating to these images, the Court directed the parties to address, pursuant to Fed. R. Civ. P. 56(f), whether summary judgment in Mr. Griffin's favor on the claims relating to these images was appropriate. In response, Mr. Griffin submitted a brief **(# 102)** seeking reconsideration of certain aspects of the Court's February 2021 Opinion. The Defendants submitted a brief **(# 103)** that addressed only the Court's finding that the the contours of Mr. Griffin's claim were "clearly established" as constitutional violations for purposes of denying qualified immunity to the Defendants on Mr. Griffin's claim for money damages. The Court takes up the two briefs in turn.

**A. Mr. Griffin's brief**

Most of Mr. Griffin's arguments do not warrant further elaboration. However, Mr. Griffin argues that the Court erred in rejecting his argument that his claim encompassed more than the 7 photographs initially discussed, and that he was contending that the Defendants had improperly confiscated more than 100 photographs. The Court concluded that Mr. Griffin's administrative grievance to CDOC asked that "I'd like all (6) photos delivered to me immediately" (plus a seventh photo received in a subsequent mailing), and thus, the Court found that Mr. Griffin would have failed to exhaust his administrative remedies with regard to any photographs beyond the 7 at issue here.

In his response brief, Mr. Griffin argues that decisions of the Reading Committee are not proper subjects for inmate grievances pursuant to CDOC Administrative Regulation 850-04(IV)(A)(4). Mr. Griffin is correct that AR 850-04 does provide that "the grievance procedure may not be used to seek review of . . . decisions of the Reading Committee." However, Mr.

Griffin himself acknowledges that he did have an "available administrative remedy[:] to file an appeal, which I did and in that appeal I challenged the confiscation of all (101) photos."

The record does not confirm Mr. Griffin's statement. The only document reflecting an appeal by Mr. Griffin of the Defendants' decision is found at Docket # 84-9 at 6. That Appeal Statement refers to a decision by the Reading Committee that specifically identified the censorship of three photos. See Docket # 84-9 at 5 (identifying 18 photos received and indicating that "Censored in part; pages censored: 3 photos"). Nothing in that appeal informs the Reading Committee that Mr. Griffin is objecting to the confiscation of photographs that were not deemed to depict sexually-explicit content. Indeed, given the timing of the appeal procedure and the information depicted in the record, it would seem that Mr. Griffin's appeal – filed on October 3, 2016 (Docket # 84-9 at 6) and in response to a Notice of Rejection/Disposition of Mail dated September 29, 2016 (Docket # 84-9 at 7) – could not possibly have objected to a determination by the Reading Committee because the Reading Committee did not make any determination on the status of the mailing until October 10, 2016 (Docket # 84-9 at 5). Both the process flow depicted in Docket # 84-9 and the process described in AR 300-26 contemplate that the mailroom will initially notify an inmate that a mailing has been preliminarily confiscated and is being diverted to the Reading Committee. AR 300-26(IV)(B)(1)(b). The inmate files an appeal statement in response to that notice. AR 300-26(IV)(B)(1)(e)(2). That appeal is forwarded on to the Reading Committee for consideration alongside the confiscated mailing.[1] AR 300-

1 AR 300-26(IV)(B)(3) contemplates an additional layer of review, by which the Administrative Head of the facility reviews the Reading Committee's decisions. The regulation does not appear to allow an inmate an opportunity to be heard again in the interim. Rather, the Administrative Head "will review the censorship decisions, the publication, and any statements received from [an] offender," apparently the same statement generated earlier in the process.

26(IV)(B)(1)(e)(2)(d) and (IV)(B)(2)(b) ("the committee must review the publication and any statements submitted by[an] offender"). In short, Mr. Griffin's appeal to the Reading Committee could not have raised an objection to the Committee confiscating some 12 (or more) photographs that had been reviewed and deemed non-explicit because any such appeal would have pre-dated any such determination and confiscation.

The Court finds that resort to the regular administrative remedy process under AR 850-04 was appropriate for Mr. Griffin's situation here. The record reflects that the mailroom embargoed a shipment of 15 or so photographs because some portion of the shipment might be deemed contraband. The mailroom forwarded the entire shipment on to the Reading Committee and, after considering Mr. Griffin's appeal statement, the Committee deemed 3 of those 15 photos to be prohibited, notifying Mr. Griffin of that result. Mr. Griffin appears to assert here that he was nevertheless not provided with the 12 photos that had passed muster. The Court cannot say that the failure to deliver the 12 permissible photographs is a "decision of the Reading Committee" that is un-grievable under AR 850-04 – indeed, it appears that the Reading Committee already decided that Mr. Griffin could receive those 12 photos, a finding that is embodied by Docket # 84-9 at 5. Whatever defect in the process prevented Mr. Griffin from receiving the 12 permissible photos, it would appear that AR 850-04 permitted Mr. Griffin to grieve that failure. Significantly, it appears that Mr. Griffin understood that matters collateral to Reading Committee determinations were nevertheless grievable through AR 850-04. On July 25, 2016, in response to the Reading Committee's determination to confiscate a portion of a prior shipment of photos to Mr. Griffin, Mr. Griffin filed an administrative grievance complaining of the non-delivery of 6 photos that he believed had survived the Reading Committee's review.

Docket # 95-1. Nothing in the record suggests that CDOC rejected that grievance as raising an un-grievable issue.

As such, the Court finds that Mr. Griffin's failure to invoke the administrative remedy procedure to grieve the confiscation of as many as 100 photos that the Reading Committee has already determined were permissible prevents him from raising claims relating to those photos under 42 U.S.C. § 1997e(e). Consequently, the Court finds no error in its earlier analysis that the proper scope of Mr. Griffin's claims should be limited to the 7 photos previously discussed.

**B. Defendant's brief**

The Defendants' brief focuses solely on the Court's analysis of the "clearly established" prong of the Defendants invocation of the doctrine of qualified immunity, arguing that the Court should find that they are entitled to such immunity on Mr. Griffin's claims against them for money damages.

To begin with, the Court repeats its prior finding that qualified immunity is a defense to a claim for <u>money</u> damages. A fair reading of Mr. Griffin's Complaint here is that Mr. Griffin seeks both monetary and injunctive relief, the latter in the form of requiring the Defendants to produce the improperly-withheld images. Despite having had an opportunity to be heard on the question of whether Mr. Griffin should be granted summary judgment on his claims relating to Images 3, 5, 6, and 7, the Defendants have not argued that Mr. Griffin should not be granted an injunction directing that those photos be provided to him. The Court will therefore enter summary judgment in Mr. Griffin's favor, directing the Defendants to deliver those four photographs to him within 7 days of this Order.

That leaves the issue framed by the Defendants: whether Mr. Griffin's constitutional right to receive Images 3, 5, 6, and 7 was "clearly established" as of 2016, such that a reasonable

corrections official would have known that confiscating those images under the auspices of AR 300-26 would violate Mr. Griffin's rights and expose that office to monetary liability. *See e.g. Whitington v. Moschetti*, 423 Fed.Appx. 767, 772 (10th Cir. 2011). The Court must address that issue by examining, at "a high degree of specificity," whether "controlling authority or a robust consensus of cases" have settled the question of whether the conduct at issue violates an individual's constitutional rights. *District of Columbia v. Wesby*, 138 S.Ct. 577, 589-90 (2018). *Wesby* emphasizes that the "specificity" requirement is "especially important in the Fourth Amendment context" because it requires factually-intensive assessments that "cannot be reduced to a neat set of legal rules." *Id.* at 590. The same could likely be said for First Amendment issues that arise in prison mailrooms, as each individual piece of inmate mail presents its own unique set of security concerns.

In *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989), the Supreme Court recognized both an inmate's First Amendment rights to communicate with and exchange ideas with persons outside of prison, as well as prison officials' rights to curtail the full measure of inmates' First Amendment exercise when such exercise rubs up against the need to maintain prison security. *Thornburgh* emphasizes that "in the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder." *Id.* at 413.

Striking the appropriate balance between the two interests is particularly difficult in the area of inmates' access to sexually-explicit materials. Courts have upheld prison restrictions on inmate access to such materials based on concerns that it could affect inmate rehabilitation efforts, enable the sexual harassment of female detention officers, and that such materials could become valuable trading commodities, among others. *See generally Mauro v. Arpaio*, 188 F.3d 1054, 1059 (10th Cir. 1999); *Payton v. Cannon*, 806 F.3d 1109, 1110 (7th Cir. 2015). In

*Callahan v. Federal Bureau of Prisons,* 965 F.3d 520, 524-25 (6th Cir. 2020), the court declined to allow a *Bivens* remedy for an inmate who, like Mr. Griffin, complained that the confiscation of sexually-suggestive photographs deprived him of First Amendment rights, in part explaining that "We ought to hesitate before volunteering the judiciary to extend deep enough into everyday federal prison administration to apply those standards to endless variations of racy and provocative images, decide the threshold for acceptable risk to personnel or inmate safety, evaluate whether a particular piece of mail crosses that threshold, and determine what kind of compensatory and punitive damages are available for such claims—all without input from the legislative or executive branches."

Here, CDOC has attempted to define the boundaries of what forms of sexually-suggestive material are and are not permissible in its prison facilities, the result being AR 300-26. For the reasons explained in the Court's February 2021 Opinion, the constitutionality of AR 300-26 is not implicated here, leaving only the question of whether the Defendants reasonably applied the terms of that regulation. Although the 10th Circuit has not been called upon to assess the "clearly established" prong of qualified immunity as it applies to CDOC employees misapplying AR 300-26, as the Court has found that the Defendants here did, the District Courts of Colorado have considered that question. In *Ybanez v. Raemisch,* 2018 WL 2994416 (D. Colo. June 14, 2018) (slip op.), Magistrate Judge Carman issued a Recommendation,[2] finding that although CDOC officials might have improperly confiscated issues of Maxim, Lowrider, and Skin & Ink magazines that "include[d] photographs of women and men in lingerie, skimpy swimsuits, or

---

[2] According to the Court's docket records, *Ybanez* was settled by the parties the day after Judge Carman's Recommendation and the matter was not taken up further by the Article III judge or the 10th Circuit.

other revealing clothing," he concluded that "what may constitute 'sexually explicit materials'" under AR 300-26 "is not so clearly established" that it would have put Defendants on notice that their conduct was unconstitutional. "Official are not liable for bad guesses in gray areas; they are liable for transgressing bright lines," he wrote. He also pointed out that "there is at least some non-binding case law holding that arguably similar acts of censorship were constitutional," citing to various District Court cases granting qualified immunity to prison officials accused of improperly censoring issues of the Sports Illustrated Swimsuit Edition, Maxim, and GQ magazines and images of women "in underwear, bikinis, and tight and scant clothing revealing breasts and buttocks."

In *Frazier v. Martinez,* 2010 WL 924254 (D. Colo. Mar. 10, 2010), Judge Arguello considered a First Amendment claim from a CDOC inmate whose access to material from Billboard, Blender, and Rolling Stone magazines was withheld, partly due to the operation of AR 300-26 and partly due to rehabilitation restrictions that prevented the inmate from having access to, among other things, "pictures of young women and girls in underwear and swimsuits." In dicta, after finding that the inmate had not stated a constitutional claim arising from CDOC's application of the restrictions to him, Judge Arguello also found that the defendants would be entitled to qualified immunity on the "clearly established" prong in any event. She found that the inmate's citations to controlling law – namely, that "the First Amendment has existed since 1789 and that people should know stealing is unlawful" -- were "too general a proposition" in light of the nuanced *Turner* inquiry that applied and the particular rehabilitative goals that the prison's Sex Offender Treatment staff had established for the inmate.

In *Brackeen v. Brown*, 2013 WL 328937 (D.Colo. Jan. 8, 2013), Magistrate Judge Tafoya recommended[3] that a CODC defendant's motion to dismiss on qualified immunity grounds be denied because "the law is clearly established that inmates have a First Amendment right to receive information while in prison and that prison officials may not censor prisoners' incoming publications unless the censorship is reasonably related to a legitimate penological interest," *citing Pell v. Procunier*, 417 U.S. 817, 822 (1974). But *Pell* – which held that a prison regulation prohibiting media interviews with inmates was not unconstitutional because the inmates retained alternative means of communicating and exercising their First Amendment rights -- predates several pertinent legal developments, including *Thornburgh*'s adoption of the *Turner* standard for evaluating prison regulations on inmate First Amendment rights, and the development of the specificity requirement of the qualified immunity analysis, among others. (It is also worth noting that *Brackeen* was decided at the motion to dismiss stage, when the precise nature of the content confiscated pursuant to AR 300-26 was presented.)

On the one hand, as this Court previously explained in its February 2021 Opinion, there is scant 10th Circuit authority that implies, by negative inference, that prison officials should be aware that confiscation of non-explicit photos of women in panties and swimsuits, like those sought by Mr. Griffin here, would violate the First Amendment. *Citing Elliott v. Cummings*, 49 Fed.Appx. 220 (10th Cir. 2002). And, the Defendants' most recent briefing notwithstanding, the Court remains troubled that the Defendants misapplication of the definitions of AR 300-26 to the images in question was so manifestly inappropriate as to present an "obvious" violation of Mr. Griffin's rights. Even in their most recent briefing, the Defendants present arguments that distort

---

3 Neither party objected to the Recommendation and Judge Jackson summarily adopted it.

the factual record and the language of AR 300-26, sometimes in patently-absurd ways. For example, they argue that Image 3, a photograph of what appears to be professional football cheerleaders performing during a game, could arguably have been properly deemed contraband under AR 300-26 because "the purpose of cheerleading is to display young women in revealing costumes and it could reasonably be interpreted to be a 'sadistic practice" under the definition in that regulation. They argue that the other images are "highly suggestive of sexual intercourse" or are "sexually evocative," ignoring the fact that AR 300-26 does not use "suggestive of" or "evocative of" as its definitions, but instead limits its reach to "actual or simulated" sexual activity. The Court continues to be concerned that, rather than applying the definitions of AR 300-26 to the subject photographs, the Defendants instead first concluded that the photos were too "suggestive" and should be censored, then set about finding a justification within AR 300-26 to support that conclusion.

But, as the Defendants point out, the 10th Circuit is reluctant to deem its own unpublished opinions, like *Elliott*, to suffice to "clearly establish" a proposition for qualified immunity purposes. *See Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) ("[a]n unpublished opinion ... provides little support for the notion that the law is clearly established on [a] point"). And cases like *Wesby* and *Grissom* make clear that, for the law to "clearly establish" a constitutional violation, the clarity of the law must be to the degree that the obviousness of the violation must be "beyond debate" among any reasonable officials. Here, although the Court rejects the Defendants' suggestion that the images in question present a "close call" as to whether they violated AR 300-26 or not, the Court is prepared to say that it is a "close call" as to whether every reasonable prison official would necessarily agree that such a conclusion is obvious. As Judge Carman explained in *Ybanez*, qualified immunity requires a prison official to

have transgressed a "bright line," not merely made a "bad guess[ ] in [a] gray area." This Court has some doubt that there is that much "gray" in AR 300-26 (much less that the Defendants made a "bad guess," rather than an attempt to justify a predetermined conclusion when applying it). But cases like *Ybanez* and *Frazier* that grant qualified immunity to prison officials in similar circumstances kick up enough dust to cause some degree of "graying" of what might otherwise be a bright line.

Accordingly, the Court vacates that portion of its February 2021 Opinion that finds that the Defendants are not entitled to qualified immunity. Instead, finding that Mr. Griffin has not shown that it was "clearly established" that their actions would deprive him of his constitutional rights, the Court finds that the Defendants are entitled to qualified immunity on Mr. Griffin's claim against them for money damages.[4]

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** summary judgment to Mr. Griffin on his claims against the Defendants as follows. The Defendants are entitled to summary judgment on Mr. Griffin's claims against them for money damages. However, the Court grants summary judgment to Mr. Griffin and against the Defendants insofar as the Defendants are enjoined and directed to provide Mr. Griffin with the photographs identified previously as Images 3, 5, 6, and 7, and to do so within 7 days of the date

---

4 As noted in the February 2021 Opinion, the extent of those monetary damages would be limited to nominal damages -- $1 per Defendant – in any event.

of this Order. The Clerk of the Court shall enter judgment consistent with this Order and thereafter close this case.

Dated this 19th day of March, 2021.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge